Noah Bleckman Good morning, Your Honors. May it please the Court, my name is Noah Bleckman. I represent Officers Tindle and Arellano, the appellants and defendants in this important appeal. I wish to reserve three minutes, please, for my rebuttal. I believe that the Court should be satisfied that I'm arguing purely issues of law so that there is jurisdiction to hear this appeal. If there's any questions on that, I can certainly entertain it. Otherwise, I'm going to move to the substance of the appeal. And the substance essentially is this. This case boils down to the fact that there is only one material fact that is at issue on this case, in this case, on this appeal, and it is undisputed. Judge Westmore of the District Court found that Mr. Amons had reached down. The plaintiffs have conceded in their brief and in the District Court that Mr. Amons reached down. We know there was a firearm in the vehicle. We know that the officers were providing commands to keep your hands up, keep your hands on the steering wheel, and not to reach. Under the Fourth Amendment... But you missed the point that there's a weapon. They knew from observation that it was in the cup holder immediately to his right where his arm was going. It wasn't in the trunk of the car. That's correct, Your Honor. So because there is a weapon close by, both officers see it, both officers know it, they're providing commands to him. So... Yeah, well, their argument is, yeah, but he was probably just trying to undo his seat belt, his safety belt, because he had been told to exit the car. What's your The response, Your Honor, is that it doesn't matter where he was reaching, essentially. The key fact is that he was reaching down in contravention of the commands. And under the Fourth Amendment case law, we have a bunch of reaching cases which we've cited for the court. In this predicament, in this rapidly dynamic situation, when Mr. Amons undisputedly reaches down, an officer in Officer Tyndall's position on the driver's side who sees that and makes a split-second decision can use deadly force because we know from Cruz that if a suspect is believed to be armed, it's unquestionably reasonable for police to shoot the suspect if they reach for the waistband or even if they reach there for some other reason. But he was told that he was buckled into his seat, so part of the command was essentially to undo the buckle, wasn't it? I mean, it wasn't stated that way, but wasn't that essentially what they were ordering him to do? That's not correct, Your Honor. He was given a command right before that statement that said, leave your hands right there. That was the command. The second part of that statement by Officer Arellano was, my partner is going to take you out of the car, all right? So there was no command for Mr. Amons to do anything at that point. The commands had all been keep your hands on the steering wheel, keep your hands up, do not reach, those type of things. This would be a different case, Judge Collins. I would agree if the officers commanded Mr. Amons to do anything specifically like to release his seatbelt. I think this case is akin to the Cruz case to the extent there was one question here that we need to answer, that a jury would have to answer, like in Cruz, did the police see Mr. Cruz reach for his waistband? If they did, they were entitled to shoot. Here on this record, though, it's undisputed that he reached down. We see that on the video. We're viewing the incident in the light depicted by the video, and also everybody concedes, the court, the plaintiffs, that he reached down. That's clear from the video of the shooting police officer. From his point of view, he saw the hand come from the steering wheel and go towards the center area. There's nothing in that that indicates that he had a better view than that, other than his hand was moving from the steering wheel towards where the police officer thought there was a weapon. Is that sufficient? Well, we have different, there's different facts on that point, Your Honor. We have Officer Tindall's testimony. He does see the hand move towards and cover the gun, because the body camera is in his chest area. His eyes are obviously a little bit higher. I see, I see. He sees the gun and sees it going towards the gun. He testifies, the camera's in a different position. All right, okay, that's helpful. Thank you. Exactly, and more specifically, Officer Tindall testified, and it's in the record, that it looked like the reach down, he was sort of cocking his hand in a different way than he had previously been reaching. That's what led to the deadly force. But we see this incident from the other side, a more clear point from Officer Arellano's body-worn camera. We can see the reaching, we can see his hand leave the steering wheel and head down. We know from the George case that if a person is armed or reasonably suspected to be armed, a furtive movement or a harrowing gesture might create an immediate threat. And what's also important from the George case is that officers are not charged with distinguishing between different biomechanical explanations for a movement such as that, for gestures. That was also from the Gonzalez case in the Northern District. So when we have this gentleman reaching down in this context, in contravention of all force is allowed from Officer Tindall's perspective. I want to move for a second to the Fourth Amendment issue with Officer Arellano. He did not fire his weapon. He provided commands and he had pointed his weapon. Those are all lawful actions in this context once he sees there's a firearm in close proximity to Mr. Ammons. The lower court essentially deemed him an integral participant in this incident on the way to denying him qualified immunity and denying the motion. But integral participation, which has been broadened, unfortunately, in this context, the plaintiffs would have to show that he was an integral participant to the constitutional violation. Here, the alleged violation is the use of deadly force. Officer Arellano did not use deadly force. So, you know, the court cannot look at this and charge him with a Fourth Amendment violation allegedly for being a part of the team. He's only liable for his own behavior. There's no vicarious liability. So we believe the court improperly lumped Officer Arellano into the Fourth Amendment violation issue. What's your closest case from the Ninth Circuit for your position? In terms of the integral participation issue? Yes. That's the issue that you were discussing. Well, there is, I haven't seen, we've cited cases in our brief, Judge Wallace, about that issue where there is officers that are on scene, but they're not participating per se in the alleged, you know, critical moment. So I don't have a case offhand on that particular issue. I believe it's in the brief. We've cited numerous cases. And it's different in the context of a shooting case, I would argue, instead of numerous officers wrestling with an unhandcuffed subject or officers participating in a search warrant type operation. I do want to move quickly to the qualified immunity issue. I don't, the plaintiffs have the burden of showing that these officers violated clearly established law. The plaintiffs have not really cited any cases that are close to this kind of a fact pattern. They cite the George case, they cite the Lopez case, and they cite another case, Nunez. I know, Judge Wallace, you were involved in the Lopez case, as was I. I argued the case to you in Pasadena, and you dissented in that case. And you found that the key issue was, we knew in that case, that the barrel was rising. And you said, essentially, there was no evidence that the barrel stopped rising, or would at any point in time. And that's why you would have found that officer, Deputy Gelhaus, in that case, was entitled to qualified immunity. I think the same is true in this case. I only convinced, I didn't convince anybody of that, you know. Well, you convinced me, Your Honor. I still have that view, but it doesn't do me any good when two people are against me. Understood. But I think Your Honor was certainly on the right track in that fact pattern, because it was undisputed in that case that the barrel of that AK-47 was rising. We have indicated in the record here, Your Honors, that there's numerous cases where an individual reaches for either a known weapon or a suspected weapon. And in those cases, there was no Fourth Amendment violation, or the officers were entitled to qualified immunity. So that's with regard to Officer Tindall. And then Officer Arellano, I believe he's clearly entitled to qualified immunity on the Fourth Amendment issue, even if he's lumped into this use of deadly force. He did not fire his firearm. So it's not, there's no clearly established law that the plaintiffs have provided here that demonstrates that Officer Arellano's simply pointing of his firearm, lawfully done, and giving commands to this subject, violated clearly established law beyond all debate. Of course, if we agree with you that no reasonable fact finder could find that excessive force was used because of the reaching for the gun, we don't even have to reach qualified immunity. True? That's correct, Your Honor. It's, I believe on this record, with it being undisputed that this gentleman did reach down, the court can find that there's no Fourth Amendment violation for either of those two officers. Moving on to some of the other claims here. The Fourteenth Amendment claim that's intertwined here, there's no evidence that the court cited in their one line in the opinion by the district court that, and there's no evidence in the record here of either of these officers having any sort of ill will or improper motives or were, you know, using force or show of force to try to get back at Mr. Ammons. The court, unfortunately, had only one line in the opinion on the Fourteenth Amendment issue, and I think everybody can agree, and I think the plaintiffs can see that the purpose to harm standard is the on my 12 minutes, but the sentence was noncompliant, nor does the record show he was noncompliant, nor does it show he was reaching towards the center console. That's what the court wrote for the Fourteenth Amendment, but there's no evidence of any purpose to harm by either of these officers. I believe also that the state law claims are intertwined essentially with the court's analysis on the deadly force and the show of force, and I will reserve the remainder of my time. Thank you, Counsel. We'll hear next from Mr. Kahina. I just say that the reason why we have these forms for acknowledgement of counsel that you're going to appear is precisely to avoid the kind of confusion that we had this morning where someone shows up for argument and has not filed a form, and it imposes a burden on the court and its staff when that occurs. So we'll accommodate it in this case, but I want to underscore that we send out those forms for a reason because it helps things flow a lot more smoothly when we know who plans to argue. All right, so Mr. Kahina, you may proceed. You have 12 minutes. Good morning, Your Honors, and if it may please the court. I'll start off with the jurisdictional issue. It's the law of the Ninth Circuit that whenever that qualified immunity appeal is not available where it relies on tribal issues of fact, a material fact, and that is what we're dealing with here, Your Honors. I guess the question I have, because I took a look this morning at the video, is what do you say is in dispute so far as the facts? About 14 seconds before the bullets are fired, the police officers are saying, and it's obviously a tragic situation as it turned out, they're saying, put your hands on the fucking steering wheel right now. Leave your hands right there. He first puts his hands on the wheel, then he reaches his right hand down close to the gun, but they don't fire then. They say, do not reach for that fucking gun. Put your hands up. Put your fucking hands up right now. Put your fucking hands up, and now he reaches again for the direction of the gun. It could have been conceitedly in his mind because of the comments about getting out of the car that he was reaching for his seatbelt, but so what? We have to view this, do we not, from the standpoint of a reasonable police office? Well, it's two issues your honor. We have to view the facts in the light most favorable to the plaintiff, but also we have to view it from the point of view of a reasonable police officer, and you're correct. Mr. Ammons is told repeatedly to put his hands up on the steering wheel. He does. In fact, at very early on, he puts his hands up in the air. Officer Arellano instructs him to put his hands on the steering wheel, which he does. At that point, Officer Tyndall walks around the car to get to the car. Officer Arellano says, my partner is going to get you out, and what's noteworthy here, your honor, is that when he does reach down, he still keeps one hand on the steering wheel. One hand, the left hand still on the steering wheel. The other hand goes down, and what plaintiffs are arguing is, viewing the evidence in the light most favorable to the plaintiff, it's going down to unbuckle his seatbelt. He's trying to comply with the two distinct orders, which are keep your hands up, my partner is going to get you out of the car. Now, the question is, what would a reasonable officer would do in that situation? And that's the strength of the videos here. We agree with Mr. Blechman that Officer Arellano's camera has the better view. Mr. Officer Arellano has the better view. He's seeing the decedent reach down. Officer Arellano, as a reasonable police officer, does not fire his weapon. So, we do have a reasonable police officer that doesn't fire his weapon, and that's what the district court found, that viewing the evidence in the light most favorable to the plaintiff... How does that make sense? It could be construed... Isn't it based upon what they logically were seeing? One police officer sees more than the other police officer, and he does not raise his gun, but it's the shooting police officer and what he sees that we have to make the decision, correct? Yes, and at deposition, the shooting police officer testified that he never saw a firearm in Mr. Ammons' hands. That's in the record. He never saw a firearm. Mr. Ammons was attempting to comply, and he never threatened any of the officers either. They've already announced there's a gun. There's a gun. He knows there's a gun. He doesn't have to see it. He knows there's a gun because it's been announced by his colleague, and it's in the recording, and even the police in the police station knew about it. So, there's a gun problem, and you say his hand goes down, and he knows there's a gun. He has to wait longer because that's all he knows. Is that your statement? No. We're basing our argument on the George case, Your Honor. Just because there's a gun doesn't give carte blanche police officers to use their weapons. There still has to be an objective threat. It's undisputed that Mr. Ammons never had physical possession of the gun in his hands. None of the officers ever saw the gun in his hands. In fact, even if we were to look at the Gell House case, Your Honor, where you dissented, Andy Lopez in that case actually had a weapon on him. It was a replica gun, but he had a gun on his person, and the barrel was moving. Mr. Ammons never even had an AK. But the issue here is that he knows there's a gun there. You don't have to see it to know it because you can rely upon what your associate police officer has done. So, is the argument, I don't quite understand what the district court did and the magistrate judge did in this case. Is the magistrate holding that until you see the gun come up, you can't pull the trigger? No, what the magistrate found is that there was no furtive movement. There was no harrowing gesture. What there was was Mr. Ammons attempting to comply with both contradictory commands. That he had his hands on the steering wheel, left hand on the steering wheel, right hand going to unbuckle his seat belt. And what the district court found was that there's enough there for a jury to conclude that there was no harrowing gesture. And I want to address the Cruz case, if I may briefly, your honor. The entire appeal here relies on the Cruz case. There's dicta, and I believe Judge Rakoff was involved in that case, that basically says that under the situation in Cruz, had Cruz reached for his waistband, the officers would have been justified in shooting. But again, it says based on Cruz's dangerous and erratic behavior up to that point, in that case, the officers knew the following. The officers knew that Mr. Cruz was a gang member who sold drugs and carried a gun. They knew Mr. Cruz was a parolee, that he was armed with a nine millimeter in his waistband, that he had intended never to go back to prison. And when officers surrounded Mr. Cruz's vehicle with their squad cars, he tried to flee and rammed his car into one of the officers. And what's noteworthy there, though, even in that situation, the court found that qualified immunity was improperly granted to the officers. So here, unlike in Cruz, Mr. Amos is actually trying to comply. He has put his hands up. He's not acting erratically. Officers don't know anything about him. They don't even know if he's committed a crime. Is it clear from the videotape that he's complying because there were orders for him to keep his hands up and the right hand clearly goes down? Yes, it does go down. And when I view it, at least, Your Honor, it goes down toward the seatbelt buckle. And the way it's been shouted, and if I recall correctly, it shouted twice at that point, is keep the hands up. And the hand doesn't stay up. It instead goes down toward the area where the gun is. It is also the area where the seatbelt is. And it may well be from the video that he was going for the seat buckle. But he's not complying with the command to keep the hands up. How do you address that fact? It's unfortunate. The situation didn't need to evolve that quickly, Your Honor. And that's one of the grand factors. Were there alternative methods? Right when he's told to keep his hands up, that's when Officer Tyndall opens his door. And it's after Officer Tyndall opens his door that his hand goes down. And that's why we believe his hand went down to unbuckle his seatbelt to try to comply with both contradictory commands, which are keep your hands up and my partner's going to get you out of the car. So that's the contradiction. And I'll briefly address the 14th Amendment argument before handing it over to Mr. Goff as to... Excuse me. Why are those orders contradictory? They're saying my partner is going to get you out of the car. So you keep your hands up. The partner comes in. If the seatbelt has to be undone, the officer undoes the seatbelt. What's contradictory there? Again, I don't know if the officer's appreciated. Strike that. What's contradictory is that he's being told to keep his hands up and also to essentially get out of the vehicle. No, he's not told to get out of the vehicle. He's told that my partner will get you out of the vehicle. Yes. But viewing it in the light most favorable to the plaintiff, Your Honor, one can reach the conclusion that that's what he understood. And that's what he's trying to assert. And again, Officer Arellano, who has the better view, does not fire. That's the reasonable officer. And viewing it from that standard, a jury could conclude that a reasonable officer would not have fired under those facts. And I will turn it to Mr. Goff, who's going to address the state tort actions. You're on mute. We can hear you. All right, Mr. Goff, you may proceed. Thank you. May it please the court. So I'm addressing the negligence claims that we have brought for wrongful death. Under California law, as the judges know, there are, under California law, that a pre-shooting conduct can also be adjudicated or looked at to determine if excessive force was used from officers, especially in the context of the use of deadly force. And we're saying that the officers, in this case, that their pre-shooting conduct was negligent, which led to a situation where Officer Tindall fired upon Mr. Ammons. We have provided, when we filed our opposition to the Defendant's Multiple Assembly Judgment, we have provided testimony from expert witness Roger Clark, who opined that, under the version of offense given by Tindall, that the use of the handgun was excessive and unreasonable under the circumstances due to the fact that Mr. Ammons never pointed a hand at Officer Tindall or Ariano and was not in possession of the handgun prior to and during the shooting. Do the California cases say that the California, in this context, the state law claims would follow the same elements as the federal 1983 excessive force claim? Well, normally I would agree with you, Your Honor, but under Hays v. County of San Diego, it's broader. What is used to determine if excessive force was used under California law is broader in the context of deadly force. Courts can use or look at the pre-shooting conduct of the Fourth Amendment context. So, in that sense, the law is broader as to determining whether force was reasonable or not under California law, which was cited by Hays v. County of San Diego, and this has been followed by the district courts in the circuit for years now. And so, we're saying that Mr. Clark had opined that the officers engaged in numerous fundamental tactical errors, lack of situational awareness. They did not give Mr. Ammons time and space to try to de-escalate the situation. They didn't take cover, and the list is numerous as to the different forms of conduct that the officers were negligent in that led to the unfortunate shooting or killing of Mr. Ammons. And for that reason, these officers are liable for wrongful death negligence and, as we all know, qualified immunity does not apply to a wrongful death claim. So, I'll submit on that if your honors have any questions or would like to respond to the arguments that I've just presented. No, I think that's satisfactory. All right. So, thank you. Your time has expired. Thank you, your honors. A couple of quick final points here. In the record, excerpts of record 356 is Officer Arellano's declaration. He says, although I did not fire my service weapon during the incident, I felt I was in imminent danger and was preparing to fire when I heard Officer Tindall's shots. I held fire because Officer Tindall had stopped the threat. So, that is in record. That's why he didn't fire. He was about to fire. Another point, and I think Judge Rakoff, you honed in on this, there were no conflicting commands here. They kept on telling him to keep his hands up, to keep his hands on the steering wheel. They told him specifically not to reach. And when they told him a statement about what they were preparing to do, where my partner is going to take you out of the car, they're trying to inform him and take this slowly, look, we're obviously, they want to get him away from that firearm. The plaintiffs cited to the George case, we know from George that when somebody is believed to be armed, which here we know there's a firearm in close proximity, a furtive movement or harrowing gesture means that it can use deadly force because of the imminence of the threat. Judge Collins, you're correct. The right hand clearly goes down. We see that on the video. Certainly, this is a tragic incident for the family, for Mr. Ammons, and for the officers involved. But qualified immunity is supposed to protect officers when they're in this type of dynamic situation, when they have to make a split-second decision. Qualified immunity is here to give them some breathing room for that issue. In response to his argument that state law would allow you to look at the pre-shooting conduct and would apply different standards, and that he could have handled it differently or given clearer commands in a way that would have avoided this tragedy. What's your response to that? That's correct, Your Honor. You are able to look at the pre-shooting conduct to determine whether behavior fell below the standard of care, for example. But here, there's not much time for pre-shooting conduct. We see the officers walk up. We hear them give commands. All those commands were very similar. Keep your hands up. They want to keep this gentleman's hands away from the firearm. Tell him clearly not to reach. So I agree that you look at the pre-shooting conduct. But here, there's no evidence that these officers did anything improperly in those 24 seconds that led up to the shooting. Finally, there's no evidence of any purpose to harm by either of these officers. I believe the state law claims also are subject to dismissal. And I believe I've exhausted my time in submit. Thank you very much. Let me ask one other question. A case was referred to earlier about a young man of color who was turning around, and the police officer thought he had an AK, but it was wooden. And the Ninth Circuit in the case found that there's no qualified immunity. How would you distinguish that case from yours? I believe Your Honor is talking about our Lopez versus Kettlehouse case that you both, yourself and I worked on. Yes. Well, Your Honor, in that case, unfortunately, the majority found that there was significant, numerous factual issues that they deemed to be material. And that's why they denied qualified immunity because they determined that the jury needed to sort through those issues. But in our case here, Your Honor, there's one material fact, whether or not this gentleman reached down in contravention of these commands. And we see from the video and we know from the testimony and the concessions by counsel and even the finding by Judge Westmore, we know he reached down. That's what makes this case different and qualified immunity should apply. All right. Thank you, Counselor. Your time has expired. The case just argued will be submitted. Thank you, Your Honors. Thank you, Your Honor.
judges: Wallace, Rakoff, Collins